UNITED STATES of America

v.

Joel W. JENISON; City of Warwick, Rhode Island; Fairlawn Credit Union; Lum Realty, Inc.; Grinnell Employees Credit Union; Greater Providence Deposit Corp.; L. Vaughn Company; Industrial National Bank; B. M. C. Durfee Trust Co.; Old Stone Bank; Majestic Hardware Company.

Civ. A. No. 78-0249.

United States District Court, D. Rhode Island.

Jan. 15, 1980.

Paul F. Murray, U. S. Atty., Everett C. Sammartino, Asst. U. S. Atty., Providence, R. I., Louis J. Lombardo, Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

.Kevin A. McKenna, Peter K. Rosedale, Anthony Vacca, John A. DeSano, Providence, R. I., Henry H. Katz, Pawtucket, R. I., Richard S. Mittleman, Justin S. Holden, Edwin H. Hastings, Thomas W. Heald, Providence, R. I., William J. Toohey, City Sol., Warwick, R. I., Merrill W. Sherman, John F. Bomster, Providence, R. I., for defendants.

## OPINION

PETTINE, Chief Judge.

This is an action by the United States to enforce its tax liens against a fund of money seized from the defendant Joel W. Jenison by the City of Warwick police. The City claims the fund by right of forfeiture. The remaining defendants are private creditors who caused attachment writs to be served against the fund.

The United States has filed a motion for summary judgment seeking a determination that the City of Warwick has no valid claim against the fund and an adjudication as to the priorities of its various liens against the fund. The government also seeks judgment as to the distribution of the fund to three of the private creditors: Grinnell Employees Credit Union (hereinafter Grinnell), L. Vaughn Co., and Majestic Hardware, Inc. L. Vaughn, Majestic Hardware, and Joel Jenison have joined in the motion for summary judgment; the remaining private creditors, Fairlawn Credit Union (hereinafter Fairlawn), Lum Realty, Inc., Greater Providence Deposit Corporation (hereinafter GPDC), Industrial National Bank, B. M. C. Durfee Trust (hereinafter B. M. C.), and Grinnell join in the motion

for summary judgment insofar as it seeks adjudication of the forfeiture claim of the City of Warwick, but object to the balance of the motion.[1] The City of Warwick objects to the motion insofar as it concerns the City's forfeiture claim.

In addition to the government's claim, a number of the private creditors have filed various counterclaims and cross claims asking the Court to determine priority among the private creditors.[2]

## I STATEMENT OF THE FACTS

On August 14, 1977, the Warwick Police Department arrested a number of persons allegedly involved in a drug conspiracy. One of those arrested was the defendant Joel Jenison from whom $151,899.11 in cash was seized.[3] The seized monies were deposited in a savings account by the City of Warwick and as of July 1, 1979, the interest earned on this account has been $24,753.

Jenison had a number of private creditors who caused writs of attachment to be placed on the fund.[4] In addition, the United States became a creditor of Jenison as a result of his failure to pay federal income taxes. The Internal Revenue Service made assessments against Jenison for the taxable year ending August 31, 1977 ($49,948.00) and the taxable years 1975 ($30,909.00) and 1976 ($211,724.00).[5] Notices of levy were served upon the City of Warwick on September 12, 1977 for the 1977 taxes and on

---

1. Subsequent to the commencement of this action, Old Stone Bank satisfied its claim against Jenison, and thus is no longer a relevant party.

2. Lum Realty and Fairlawn each have filed cross claims against all the other private creditors and the City of Warwick as well as a counterclaim against the government asking that the Court declare their priority to the fund.
 B.M.C. has filed a counterclaim, but in the counterclaim it has asked the Court to declare its priority over the other defendants as well as over the plaintiff.
 Majestic has filed neither a cross claim nor a counterclaim, but in its answer, it asks that the Court declare its priority over all the other parties.

3. Although no narcotics were found in Jenison's possession, Grand Jury indictments were returned against him in November, 1977, for possession of a weapon, possession of marijuana with intent to distribute, and conspiracy to possess marijuana with intent to distribute. These indictments were subsequently ruled defective. According to Warwick city solicitor William J. Toohey, Jenison has been reindicted; however, Mr. Toohey has not been able to provide the Court with evidence of the date or nature of these "new" indictments. He has, however, advised by letter of December 21, 1979, that a judge of the state Superior Court has declared the search and seizure of Mr. Jenison illegal—accepting this as fact, it in no way affects this opinion.

4.

| Creditor's Name | Date of Attachment | Amount of Attachment | Date of Judgment | *Judgment Amount |
|---|---|---|---|---|
| Fairlawn Credit Union | 8/23/77 | $3,585.35 | 6/13/78 | $3,781.65 |
| Lum Realty, Inc. | 8/23/77 | $35,000.00 | 5/18/78 | **$31,352.08 |
| Grinnell Emp. Credit Union | 8/25/77 | $10,000.00 | 2/10/75 | $6,910.15 |
| Greater Pvd. Deposit Corp. | 8/29/77 | $60,000.00 | 12/23/77 | $45,560.00 |
| L. Vaughn Company | 9/1/77 | $5,360.06 | 11/11/77 | $5,360.06 |
| Industrial Nat'l. Bank | 9/6/77 | $131,000.00 | None yet | N/A |
| B. M. C. Durfee Trust | 9/7/77 | $17,331.00 | 5/15/78 | $28,085.44 |
| Majestic Hardware Co. | 9/27/77 | $2,000.00 | 7/09/74 | $999.00 |

* Judgment amount stated does not include interest and costs also awarded by court.

** Judgment on appeal to R. I. Supreme Court.

---

5. Since the filing of this action, an additional assessment has been made against the taxpayer on December 25, 1978, for the year ended December 31, 1977. Since the government's prior assessments alone would exhaust the

December 8, 1977 for the 1975 and 1976 taxes demanding that all property belonging to taxpayer Jenison in the City's possession be surrendered to the United States. The City has refused to honor these levies claiming that it is entitled to retain the monies pursuant to the provisions of R.I. G.L. § 21–28–5.05 relating to forfeitures.

In addition to the notices of levy, the United States filed notices of lien as follows: notice of lien for taxable year 1977 filed in Warwick, Rhode Island on September 12, 1977 and in Broward County, Florida on November 26, 1977; notices of lien for taxable years 1975 and 1976 filed in Warwick, Rhode Island on December 12, 1977 and in Broward County, Florida on January 5, 1978. The notices of lien were filed in both Rhode Island and Florida because of a dispute as to Jenison's place of residence.

The United States claims a priority right to the fund over all the private creditors except Grinnell, L. Vaughn, and Majestic based on its service of the various notices of levy and filings of the various notices of lien.

## II THE CITY OF WARWICK'S FORFEITURE CLAIM

The City of Warwick relies on the Controlled Substances Act, R.I.G.L. § 21–28–5.-05,[6] to support its forfeiture claim. This statute enumerates various items that are subject to forfeiture to the State, including all illegally manufactured or distributed controlled substances, all related raw materials and equipment, and all books, records and research connected with the sale or manufacture of such controlled substances. If the money seized from Jenison was properly forfeited under the statute, then neither the United States nor the private creditors could acquire a valid lien on Jenison's interest in the fund since title to the money would have passed to the City immediately upon seizure.

### A. Abstention

■ Because the relevant statute involves questions of applicability not previously resolved by Rhode Island courts and because such resolution might avoid the present litigation, the City of Warwick urges that the Court abstain from rendering a decision at this time. The mere fact that state law is unsettled, however, is not sufficient to mandate abstention. As Chief Justice Stone explained in *Meredith v. City of Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943):

> [T]he difficulties of ascertaining what the state courts may hereafter determine the state law to be do not in themselves af-

---

fund, the Court sees no reason to consider this additional assessment.

The amount assessed including penalties and interest as of June 19, 1979 is $60,707.84 for the year ending August 31, 1977; $47,204.46 for 1975; and $279,145.59 for 1976.

**6.** This section reads as follows:

21–28–5.05. Forfeiture of controlled substances, related materials and other property, equipment and records.—(a) The following shall be subject to forfeiture to the state and no property right shall exist in them:

(1) all controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this chapter.

(2) all raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this chapter.

(3) all property which is used, or intended for use, as a container for property described in paragraph (1) or (2), subject to the limitations of § 21–28–5.04.

(4) all books, records and research, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this chapter.

(b) Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the law enforcement agency making the seizure. Whenever property is forfeited under this chapter the law enforcement agency may:

(1) retain the property for official use;

(2) sell any forfeited property which is not required by this chapter to be destroyed and which is not harmful to the public, but the proceeds of any such sale, after first deducting an amount sufficient for all proper expenses of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of custody, advertising and court costs, shall be paid to the general treasurer for the use thereof.

ford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought to it for decision.

. . . . .

Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine. . . . To remit the parties to the state courts is to delay further the disposition of the litigation which has been pending for more than two years and which is now ready for decision. It is to penalize petitioners for resorting to a jurisdiction which they were entitled to invoke, in the absence of any special circumstances which would warrant a refusal to exercise it. *Id.* at 234, 236–37, 64 S.Ct. at 11, 12.

 Special circumstances do exist in which abstention is appropriate or even mandatory, but the City has failed to present any evidence that the present matter constitutes one of those cases. Under the *Pullman* doctrine, for instance, a federal court should refrain from deciding a case in which state action is challenged as contrary to the federal constitution if there are unsettled questions of state law that may be dispositive of the case and avoid the need for deciding the constitutional question. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *see* 17 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4242. Since the instant case does not involve the constitutionality of the state forfeiture statute, the Court can see no way in which the *Pullman* doctrine can be applied to this case.

 Another instance in which abstention is appropriate is when a similar action is already pending in state court. *See* Wright, Miller & Cooper, *supra*, at § 4246. In such a case, the federal court can choose to postpone decision for a time to await the opinion of the state court. Even so, the decision to postpone adjudication is a discretionary one and the Court must consider such factors as the possible delay, the relative difficulty of estimating what the state court would decide, and the importance to the case of a state court determination. Since the City of Warwick has not produced evidence of any case pending before a state court that involves the Rhode Island forfeiture statute,[7] the Court has no basis to abstain.[8]

### B. *The forfeiture statute*

The United States challenges the City's reliance on the Rhode Island forfeiture statute on three grounds: the State of Rhode Island and not the City of Warwick is the appropriate entity to enforce the forfeiture provisions of the statute; money is not an item subject to forfeiture under the statute; and no forfeiture proceeding has been initiated as required by the statute. Since the Court agrees with the government's second contention, there is no need to discuss the merits of the plaintiff's other two arguments.

 Because forfeitures of property are drastic remedies, forfeiture statutes are strictly construed against forfeiture and in favor of the person whose rights are affected. *Kane v. McDaniel*, 407 F.Supp. 1239,

---

**7.** The appendix to the memorandum submitted by defendants GPDC and Lum Realty includes a complaint filed in Kent County Superior Court on September 27, 1977, by Joseph Walsh, Mayor of the City of Warwick, along with the treasurer and chief of police of the City, to enjoin the private creditors in the instant case from executing, levying or in any way attempting to obtain possession of the fund of money seized from Joel Jenison. According to the Kent County clerk's office, however, that action was dismissed without prejudice on October 13, 1977.

**8.** It is true that certification is permissible in circumstances that would not merit abstention, but certification is a highly discretionary procedure and the Court declines to utilize such a procedure in the absence of unusual circumstances.

1242 (W.D.Ky.1975). This policy makes sense, since forfeitures are not punishment for criminal activity, but rather an exercise of the police power of a state to confiscate property that was instrumental in a crime so as to prevent the continuance of unlawful acts. *Id.* Though some articles such as counterfeit money, narcotics, or dangerous weapons are contraband by their very nature, other articles, such as large sums of money, acquire that status only if their possession or receipt is substantially and instrumentally related to illegal behavior. *See United States v. Bowdach,* 414 F.Supp. 1346, 1353 (S.D.Fla.1976). As Judge Bownes pointed out in *United States v. One 1972 Datsun,* 378 F.Supp. 1200 (D.N.H. 1974),

> Unlike the seizure of *per se* contraband, "the possession of which, without more, constitutes a crime," and the seizure of which directly promotes the remedial goals of a forfeiture scheme, seizure of derivative contraband may or may not be remedial, depending on the nature and substantiality of its association with the underlying illegal activity. Therefore it is important to require that derivative contraband be substantially and instrumentally connected with illegal behavior before it is subject to forfeiture.
>
> *Id.* at 1206 (citation omitted).

Accordingly, the burden of establishing this connection must lie with the party claiming the forfeiture. *See Kane, supra,* at 1242; *Commonwealth v. Landy,* 240 Pa.Super. 458, 362 A.2d 999, 1005 (1976).

In the instant case, the City of Warwick acknowledges that money is not specifically mentioned in the Rhode Island forfeiture statute, but points to two out-of-state cases that have upheld the forfeiture of money under similar statutes. Both of these cases can easily be distinguished.

The first case cited by the City, *State v. Moriarty,* 97 N.J.Super. 458, 235 A.2d 247 (1967), concerned an order to show cause why monies seized from a private garage and belonging to a convicted gambler should not have been forfeited to the county as gambling contraband. The New Jer-

sey forfeiture statute—since repealed—reads in relevant part:

> Whenever any furniture, implement, *device,* or machine, made or used for the purpose of gambling or for the playing of any game wherein money or other thing of value is wagered or gambled, [it] shall be seized or captured by the police . . . . N.J.S. 2A:152–6 (emphasis added) (repealed by L.1978 c. 95, § 2c:98–2).

Although this statute does not expressly refer to money, the court held that gambling monies are subject to seizure and forfeiture under the statute. Unlike the Rhode Island statute, however, the New Jersey law has an additional provision that specifically defines money as a "gambling device":

> Whenever any money, currency or cash shall be seized or captured by the police . . . in connection with any arrest for violation of or conspiracy to violate any gambling law of this state, the said money, currency or cash shall be deemed prima facie to be contraband of law as a *gambling device,* or as part of a gambling operation, and it shall be unlawful to return the said money, currency or cash to the person or persons claiming to own the same, or to any other person, except in the circumstances and manner hereinafter provided.
>
> N.J.S. 2A:152–7 (emphasis added) (repealed by L.1978, c. 95, § 2c:98–2).

A further distinction between the present case and *Moriarty* is that the New Jersey court, after engaging in a detailed analysis of the evidence presented by the county, determined that the currency seized was indeed earmarked for gambling purposes and that it was seized in connection with an arrest for violation of the gambling laws. *Moriarty, supra,* at 258. This is in stark contrast to the City of Warwick's vague and inconclusive allegations—unsupported by affidavit or documentary evidence—that the money seized from Jenison was directly connected with illegal activity.

The other case relied on by the City is *Commonwealth v. Landy,* 240 Pa.Super. 458, 362 A.2d 999 (1976). In that case, a petition was filed for return of money con-

fiscated at the time of petitioner's arrest for a narcotics offense. The relevant Pennsylvania statute is almost identical to its Rhode Island counterpart. Among the property listed as subject to forfeiture are all controlled substances, all raw materials used in the manufacturing of such substances, all property used as containers for controlled substances, all vehicles used to transport the substances, and all relevant books and records. 35 P.S. 780–128. Like R.I.G.L. § 21–28–5.05, the Pennsylvania statute does not specifically authorize the forfeiture of money obtained in the illegal sale of controlled substances. Nevertheless, the *Landy* court concluded that under certain circumstances money is subject to seizure and forfeiture, the primary circumstance being when the money is the "fruit of crime"—that is, derivative contraband. 362 A.2d at 1002. The court stressed, however, that such money proceeds cannot be seized unless they are "*directly* derived from and *directly* traceable to the sale of a controlled substance," *id.* (emphasis added), and that the government has the burden of proving the material allegations by a preponderance of the evidence. *Id.* at 1005.

▆ In the case at bar, the City of Warwick has failed to meet this burden. The fact that money is not specifically included in the detailed listing of items subject to forfeiture in R.I.G.L. § 21–28–5.05 is not dispositive, but in the absence of such direct statutory authority, the City has the burden of showing that the money seized is substantially and instrumentally related to illegal behavior. *See One 1972 Datsun, supra.* In considering the evidence in the

light most favorable to the City of Warwick, this Court must conclude that the City has not established this relationship by a preponderance of the evidence. Jenison's arrest has not led to conviction on any charge, and the City has failed to show that there are any indictments pending against Jenison that directly involve the seized funds. The fact that Jenison was observed knocking on the door of a motel room in which illegal drugs had recently been confiscated is simply not sufficient evidence to support the City's conclusion that "Jenison was linked to a large scale marijuana smuggling operation and the large amounts of money he was carrying had been used or were to be used in the purchase or sale of a controlled substance."

In consideration of the policy of strictly construing forfeiture statutes and in light of the City of Warwick's failure to establish a substantial and instrumental connection between the seized monies and any illegal behavior, this Court concludes that the City's claim under the Rhode Island forfeiture provision is invalid and must be denied. Accordingly, the Court grants the plaintiff's motion for summary judgment as it pertains to the City of Warwick's forfeiture claim.

## III PRIORITY OF FEDERAL TAX LIENS VERSUS OTHER LIENS

▆ Pursuant to Sections 6321 [9] and 6322 [10] of the Internal Revenue Code of 1954, the United States obtains a lien upon all property of the taxpayer from the date of assessment.[11] Although a tax lien is

---

**9.** § 6321 *Lien for Taxes*

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

**10.** § 6322 *Period of Lien*

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so as-

sessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

**11.** The following assessments were made against Joel Jenison: for the tax year ending August 31, 1977, an assessment was made on September 12, 1977 in the amount of $49,948 (penalties and interest as of June 19, 1979 have increased the figure to $60,707.84); for the tax year 1975, an assessment was made on November 21, 1977 in the amount of $30,909 (increased to $47,204 as of June 19, 1979); for the tax year 1976, an assessment was made on November 28, 1977 in the amount of $211,724

perfected on the date of assessment, it is not entitled to priority over a choate lien [12] unless notice of lien has been filed pursuant to Section 6323(a) of the Internal Revenue Code before the choate lien arises:

> The lien imposed by section 6321 shall not be valid as against any purchaser, holder of security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

26 U.S.C. § 6323(a)

Thus, any creditor achieving the status of "judgment lien creditor" before the filing of the government's notice of lien is entitled to priority over the United States with respect to property subject to the judgment lien even if the government's assessment was made before judgment.

■ In order for a notice of tax lien to be valid, it must be filed in the state in which the property subject to the lien is situated. 26 U.S.C. § 6323(f). The code defines the situs of personal property as the residence of the taxpayer at the time the notice of lien is filed. *Id.* Because of a dispute as to Jenison's residence, the government filed notices of tax lien in both Rhode Island and Florida as follows: notice of lien for taxable year 1977 filed in Warwick, Rhode Island on September 12, 1977, and in Broward County, Florida on November 26, 1977; notices of lien for taxable years 1975 and 1976 filed in Warwick, Rhode Island on December 12, 1977, and in Broward County, Florida on January 5, 1978.

Subsequent to the filing of this action, the parties stipulated that Jenison's residence be deemed to be in Broward County, Florida at all times relevant to the case at bar. The result of this stipulation is that the notices of lien filed in Rhode Island are invalid while the notices filed in Florida are valid.

The United States concedes that the liens of Grinnell, L. Vaughn, and Majestic Hardware became choate prior to the filing of the notices of lien and thus have priority over the United States.[13] In addition, it seems beyond dispute that the liens of Fairlawn, Lum Realty, Industrial National Bank, and B. M. C. were inchoate at the time of the filing of the notices of lien.[14] The only lien thus in dispute is that of GPDC.

Since GPDC's judgment against Jenison dates from December 22, 1977—two weeks before the government filed its notices of lien in Broward County for the taxable years 1975 and 1976—GPDC would seem to have priority over the government. The government disputes this; it argues that the levy served on the City of Warwick [15] on December 8, 1977, had the effect of

---

(increased to $279,145 as of June 19, 1979). These sums in the aggregate exceed the fund by more than $175,000.

**12.** In order for a lien to be choate, the identity of the lienor, the property subject to lien and the amount of the lien must be established. *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). Thus, a prejudgment attachment is inchoate up until the time of judgment because the amount of the lien has not been conclusively established. In order for a prejudgment attachment to have priority over a federal tax lien, then, judgment must be entered before the notice of lien is filed. The theory of relation back to the date of attachment, although valid as concerns priority between private creditors under state law, is not effective for federal tax purposes.

**13.** Grinnell obtained a judgment against Jenison on February 10, 1975 and served a writ of attachment on August 25, 1977. L. Vaughn served a prejudgment writ of attachment on the Treasurer of the City of Warwick on September 1, 1977 and obtained a default judgment against Jenison on November 11, 1977. Majestic's judgment against Jenison dates from July 9, 1974 and the date of its lien is September 27, 1977. *See* note 4, *supra*.

**14.** All four of these creditors have prejudgment writs of attachment. All but Industrial National Bank have since obtained judgments against Jenison as follows: Fairlawn—June 13, 1978; Lum Realty—May 18, 1978; B. M. C.—May 15, 1978. *See* note 4, *supra*.

**15.** Section 6331 of the Internal Revenue Code authorizes the government to collect an unpaid tax by levy upon all property and rights to property belonging to the delinquent taxpayer or on which there is a lien provided by section 6321. 26 U.S.C. § 6331.

**·756**

seizing the fund for the United States and transferring ownership to the government, thus preventing any subsequent party, such as GPDC, from asserting a lien against Jenison's interest in the fund. In essence, the government argues that there are two methods by which it can obtain priority over private creditors: one is by filing a notice of tax lien pursuant to § 6323; the other is by serving a notice of levy pursuant to § 6331.[16]

■ After careful examination of the cases cited by the government in support of this position, I conclude that for the purpose of determining the government's priority over other lien holders, service of a notice of levy is not equivalent to filing a notice of lien.

The cases cited by the plaintiff in support of its contention were decided on the basis of facts significantly different from those in the present case. For example, the government cites *American Acceptance Corp. v. Glendora Better Builders, Inc.*, 550 F.2d 1220 (9th Cir. 1977), as support for the proposition that upon levy all ownership rights are transferred to the United States. In that case, the government served a notice of levy on the corporate employer of a delinquent taxpayer for all property and rights to property belonging to the taxpayer in the employer's possession. Shortly thereafter, American Acceptance Corp., a creditor of the taxpayer, served a writ of garnishment on the employer to satisfy a judgment it had obtained against the taxpayer. The court held that the notices of levy "had the effect of seizing the taxpayer's property" for the government and that "[n]o *subsequent* party could *gain* any rights in [the] property" from the holder of the property since "[a]ll rights were [now] held by the I.R.S." 550 F.2d at 1222–23 (emphasis added). While the premise of the

case is sound, it is inapposite here. None of the private creditors in the present case is a *subsequent* party seeking to *gain* rights from the holder after the levy transferred all interests to the IRS. Rather, each of the private creditors is a *prior* party, having acquired rights in the property by virtue of each of its respective post- or pre-judgment attachments before any interest was transferred to the IRS by virtue of the levy.

Similarly, in *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), the other case cited by the plaintiffs, the government levied on property prior to any other liens attaching. In *Phelps*, the IRS issued a deficiency assessment against the taxpayer and thereby acquired a § 6321 lien on all of the taxpayer's property. The taxpayer later purported to transfer his assets to an assignee for the benefit of creditors after which the government filed a notice of tax lien and served a notice of levy upon the assignee. An involuntary petition of bankruptcy was later filed against the taxpayer and the trustee claimed the property for the estate free of the federal claim on the theory that the notice of lien was invalid since title had already passed from the taxpayer. The court, after finding that, at the time of transfer, the property was already subject to the tax lien and the assignee held the property for the taxpayer, held that the levy was valid and gave the government full legal right to the property. 421 U.S. at 337, 95 S.Ct. 1728. Again, as distinguished from the present case, at the time of the levy there were no prior attachments or liens on the property.

■ In its memorandum in support of its motion for summary judgment, the United States expressly concedes that

---

**16.** Defendant Lum Realty and GPDC argue that the government's acceptance on January 5, 1978, of an assignment of rights from Jenison is inconsistent with its claim that it "owned" the fund as of December 8, 1977. They contend that by accepting the assignment, the government "elected its remedies" and is thus barred from asserting either its levy or its lien.

Without engaging in an extended discussion of the disfavor with which the Federal Rules view the doctrine of election of remedies, I simply point out that the government's acceptance of the assignment can hardly be said to have evinced a purpose to forgo its remedies under the Internal Revenue Code. *See* 25 Am.Jur.2d Election of Remedies § 3.

"when a notice of levy is served upon a person holding property of the taxpayer, the United States acquires the property as of the date such levy is served, *except to the extent the property is subject to a prior judicial attachment.*" Plaintiff's Memorandum at 8–9 (emphasis added). This makes eminent sense since the United States, by levy, can only seize whatever rights the taxpayer had. Where the taxpayer's property or right to property is subject to preexisting liens so is that which the government takes by levy. The United States later states, however, that its levy seized all property subject only to prior *judgment* lien creditors. Plaintiff's Memorandum at 10. Not only is there no statutory or judicial authority in support of that notion, but a federal district court has expressly rejected it. In *City of Vermillion v. Stan Houston Equipment Co.*, 341 F.Supp. 707 (D.S.D. 1972), the IRS had served notice of levy as to its entire claim, but had filed a notice of tax lien as to only a portion of the claim. As to the priority asserted by the government by virtue of levy only, the court stated that "notices of levy . . . [are] not sufficient to serve as notices of liens" under section 6323. 341 F.Supp. at 713. The only way the government can obtain priority over a judgment lien creditor is by complying with the statutory requirement of 26 U.S.C. § 6323(a), (f) that a notice of lien be filed prior to the creditor obtaining judgment. This requirement is more than mere window dressing; it was enacted to give potential creditors protection against an unrecorded lien. *See Hoover, Inc. v. McCullough Industries*, 351 F.Supp. 1023 (E.D.Pa. 1972). It would be unfair to allow a creditor to pursue its claim to judgment with no notice that the government already had a perfected priority lien on all of the debtor's property.

In light of the preceding discussion, the Court concludes that the service of a notice of levy is not a procedural alternative to filing a notice of tax lien. As a result, I must conclude that GPDC has priority over the government.

The government is thus entitled to as much of the fund as remains after the liens of Grinnel, Majestic, L. Vaughn, and GPDC—including post-judgment interest [17]—are set aside.

## IV PRIORITY AMONG THE PRIVATE CREDITORS

Having determined that portion of the fund to which the government is entitled, the Court's next task is to decide how to distribute the money that remains. Defendant Lum Realty has submitted a supplemental memorandum arguing that priority should be determined according to state law rather than federal law, and that the parties who had priority over the government under federal law do not necessarily have priority under state law. Without commenting on the merits of this argument, the Court prefers to postpone determination of this issue until a formal motion for summary judgment on the cross claims is filed. Although the Court expects that such a motion will be filed forthwith, fairness dictates that all the private creditors be put on notice that the Court is ready to consider this issue so that they can respond if they wish to Lum Realty's proposed formula for distribution.

---

17. The private creditors are entitled to 6% interest on their judgments pursuant to R.I.G.L. § 9–2–8, § 6–26–1; 26 U.S.C. § 6323(e)(1), (6).