**KANSAS CITY, MISSOURI, Plaintiff,**

v.

**TRI–CITY CONSTRUCTION COMPANY and United States Fidelity & Guaranty Company and The Internal Revenue Service, Defendants.**

No. 86–0570–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Aug. 11, 1987.

Thomas C. Clark, Asst. City Atty., Kansas City, Mo., Richard N. Ward, City Atty., for plaintiff.

Robert D. Metcalfe, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Robert G. Ulrich, U.S. Atty., Kansas City, Mo., for I.R.S.

Tri-City Construction Company pro se.

Robert A. Babcock, Preston Dean, Margolin & Kirwan, Kansas City, Mo., for U.S. Fidelity & Guar. Co.

## MEMORANDUM OPINION AND ORDERS

JOHN W. OLIVER, Senior District Judge.

The City of Kansas City, Missouri (City) filed the pending interpleader action to determine who is entitled to an earned and undisbursed contract partial payment of $27,703.28 under a contract the City entered into with Tri-City Construction Company (Tri-City) on June 26, 1985. United States Fidelity & Guaranty Company (USF

& G), at the request of Tri-City, provided a performance and maintenance bond for the contract amount of $1,705,166.75. Tri-City abandoned work on the project.

The factual circumstances are fully stipulated. The stipulation of the parties is attached as Appendix A and incorporated by this reference as our findings of fact. Neither the City nor Tri-City asserts any claim for the $27,703.28 partial payment. In paragraph 23 of the stipulation USF & G and the United States agree that this case may be determined as though cross-motions for summary judgment were filed by these parties and that neither party wishes to adduce any additional evidence.

The United States claims a superior right to the partial payment as the result of its service of a Notice of Levy on the City for Tri-City's unpaid federal withholding and Federal Insurance Contribution taxes. USF & G claims a superior right to the partial payment under the stipulated circumstances of this case. For the reasons stated below, USF & G's motion for summary judgment will be granted and the United States' cross-motion for summary judgment will be denied.

## I

It is undisputed that Tri-City failed to pay the claims of subcontractors, suppliers and materialmen furnishing labor and material during the performance of the work required by the contract. Stipulation of Facts (hereinafter Stip.) No. 9. Tri-City wrote the City on August 22, 1985 advising that all future payments under the contract should be issued to USF & G.[1] Stip. No. 10 and Exhibit C. Tri-City abandoned the work project on March 28, 1986. Stip. No. 11. On April 16, 1986, Tri-City advised its surety, USF & G, that it could not complete the project and requested that it continue to pay the claims against Tri-City for labor and materials. Stip. No. 12. USF & G

thereafter secured the services of another contractor which completed the contract. Stip. No. 13. In total, USF & G has paid claims of suppliers and subcontractors under its bonds with Tri-City in the amount of $1,149,544.02. Stip. No. 14.

An assessment for unpaid federal withholding and FICA taxes for the tax period ending December 31, 1984 in the amount of $359,151.06, along with penalties and interest, was assessed against Tri-City on March 18, 1985. Stip. No. 6. Notices of federal tax liens were subsequently filed against Tri-City with the Recorder of Deeds for Jackson County and Ray County, Missouri on February 26, 1986 and March 14, 1986. Stip. No. 16. An Internal Revenue Service Notice of Levy reflecting the unpaid balance of the assessment was served on the paymaster of the City of Kansas City, Missouri on March 17, 1986 for all property rights and rights to property of Tri-City in the amount of $187,716.67. Stip. No. 15.

## II

■ USF & G'S initial argument for summary judgment is that the United States has no lien upon the partial payment which can be foreclosed since Tri-City's breach of contract divested Tri-City of its rights to the contract funds. We agree.

Section 6323 of 26 United States Code provides that "if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon *all property* and *rights to property* belonging to such person." (Emphasis added). Thus, the threshold question in determining who is entitled to the partial payment is whether and to what extent Tri-City had "rights" to the partial payment to which the tax lien could attach. *See e.g., Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960); *Tony Thorn-*

---

1. From August 22, 1985 through February 19, 1986 payments to creditors of Tri-City were made on checks executed by both USF & G and Tri-City. Stip. No. 14. These payments totaled $755,409.22. *Id.* Although these payments were made through checks signed by both USF & G and Tri-City, the facts clearly indicate USF

& G funds were being utilized. *Id.* From April 29, 1986 payments to creditors were made directly by USF & G. *Id.* These direct payments totaled $394,053.10. *Id.* In total, USF & G paid $1,149,544.02 to suppliers and subcontractors under its bond. *Id.*

*ton Auction Service v. United States,* 791 F.2d 635, 637 (8th Cir.1986); *United States v. Trigg,* 465 F.2d 1264, 1267 (8th Cir.1972). State law determines this question and thus we must look to Missouri law to determine whether Tri-City possessed any rights to the payment. *See, e.g., Aquilino,* 363 U.S. at 512–13, 80 S.Ct. at 1280.

Under Missouri law Tri-City never possessed a right to the partial payment to which the United States tax lien could attach. It is clear from the facts that as of August 22, 1985, Tri-City was in default on its contract with the City of Kansas City, Missouri. First, shortly after commencing performance, Tri-City failed to pay the claims of subcontractors, suppliers and materialmen. Second, on August 22, 1985, less than two months after the execution of the construction contract, Tri-City sent a letter to the City requesting that all future payments under the contract should be issued to the surety. This direction was irrevocable and subject to change only upon the written direction and consent of USF & G. Finally, as of August 22, 1985, USF & G became obligated to pay under its contract of suretyship with Tri-City the obligations of its principal. In fact, by March 1986, USF & G had made payments to creditors of Tri-City totaling $755,409.92.

█ Under Missouri law all that is necessary for a surety's equitable right of subrogation and equitable lien upon retained funds to attach to the exclusion of the contractor is that "the contractor be in default as a *matter of fact,* and that as a result of such default the surety become obligated to pay under its payment bond, and discharge the obligations of its principal."[2] *First State Bank v. Reorganized School District R–3,* 495 S.W.2d 471, 481 (Mo.App.1973). The contractor in this case was in default when it could not pay its subcontractors, laborers and materialmen.

That default was fully recognized by all parties concerned when the contractor directed the City to make all future payments to the surety on August 22, 1985.

It is thus clear that as of August 22, 1985, Tri-City was in default under its contract with the City as a matter of fact and USF & G was obligated to pay under the terms of its bond. Tri-City's default severed any right of Tri-City to future partial payments and entitled USF & G to all future payments under the contract. We thus find and conclude that the United States' tax lien and subsequent levy failed to attach to any interest or right in the partial payment at issue.

### III

The United States, however, contends that through the Internal Revenue Service Notice of Levy served on the City on March 17, 1986, the United States obtained constructive possession of the progress payment of $27,703.28 due and owing to Tri-City. This levy allegedly preceded the date USF & G's equitable lien or right of subrogation arose, which the government contends was on April 16, 1986, the date of Tri-City's declared default. Thus, the United States argues since USF & G's equitable lien was not choate until after the United States tax levy, USF & G had no prior interest in the progress payment which would defeat the rights of the United States.

█ We reject this argument in light of our finding and conclusion stated above that Tri-City's default as a matter of fact as of August 22, 1985 divested Tri-City of any right to the partial payment to which the United States tax lien and subsequent levy could attach. Moreover, we agree with USF & G that even assuming, *ar-*

---

**2.** The United States incorrectly asserts that a formal notice of default must be given to the surety before a subrogee's rights ripen. The court in *First State Bank* expressly stated that default as a *matter* of fact is all that is needed to vest the interest in future contract payments in the surety to the exclusion of the taxpayer/contractor. *See also Great American Insurance Co. v. United States,* 202 Ct.Cl. 532, 481

F.2d 1298, 1308 (1973) (" 'It is not necessary that there be a formal declaration of the contractor's default. All that is necessary for the surety to prevail is that the contractor be in default as a matter of fact' " [quoting *Fidelity & Deposit Co. v. United States,* 183 Ct.Cl. 908, 393 F.2d 834, 837 (1968) ] ). The cases the United States utilizes to support its argument are not dispositive of this issue.

*guendo,* Tri-City possessed rights to the partial payment to which the United States tax lien and subsequent levy could attach, USF & G's rights in the payment as surety for the defaulting contractor are superior.

The United States relies on *Dependable Insurance Co. v. United States,* 42 A.F.T. R.2d 78-5922 (D.Md.1978), as authority for its priority argument. We find and conclude, however, that the court's analysis in *Dependable* is untenable.

In *United States v. Trigg,* 465 F.2d 1264 (8th Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973), a case similar to *Dependable,* the Eighth Circuit recognized the surety's super priority rights in progress payments levied upon by the United States prior to the contractor's default as a matter of fact. The surety in *Trigg* executed a performance bond in August, 1968 for the contractor under construction contracts with two Arkansas municipalities. In March, 1969 the United States served notices of levy upon the two municipalities. The municipalities subsequently transferred progress payments to the United States. On April 13, 1967 the contractor defaulted on its contracts and the indemnitor of the surety paid the contractor's previously unpaid materialmen and laborers and secured another contractor to complete the two projects.

In determining the priority of competing claims to the progress payments levied upon by the United States prior to the default of the contractor, the court concluded that "the surety, Maryland Casualty Company, would clearly be entitled to priority against the progress payments if [the surety] had actually made disbursements under the suretyship agreement." *Id.* at 1271 (dicta). The court, in support of this conclusion, relied heavily on the language of 26 U.S.C. § 6323 and the Senate Committee Report[3] explaining the priority of obligatory disbursement agreements (*e.g.,* surety agreements). *Id.* Thus, the Eighth Circuit in *Trigg,* a case involving a *tax levy* prior to the contractor's default as a matter of fact, failed to adopt the analyses utilized by the *Dependable* court. *See also Housing Authority v. General Insurance Co.,* 392 F.Supp. 65 (E.D.Mo.1974) (relying on the surety's equitable rights, the court granted priority to the surety although United States' tax levy was prior to contractor's default).

■ This Court does not dispute the United States' contention that, assuming Tri-City had an interest in the partial payment, its levy in March, 1986 constituted a seizure of the payment. *See Phelps v. United States,* 421 U.S. 330, 337, 95 S.Ct. 1728, 1732, 44 L.Ed.2d 201 (1975). The United States, however, can only seize whatever rights the taxpayer had. *United States v. Jenison,* 484 F.Supp. 747, 757 (D.R.I.1980). Where the taxpayer's property is subject to preexisting liens so is that which the government takes by levy. *Id.*

■ Suretyship law provides the surety an equitable lien to funds owing to a principal upon the surety's performance of the principal's obligation, which relates back to the time the contract of suretyship was executed. *See, e.g., Home Indemnity Co. v. United States,* 313 F.Supp. 212, 213-14 (W.D.Mo.1970). USF & G's payments to creditors of Tri-City and completion of the contract after Tri-City's default created an equitable lien in the partial payment which relates back to July 26, 1985, the date the contract of suretyship was executed. Hence, the United States' March 26, 1986 tax levy seized the partial payment subject to USF & G's equitable lien and is secondary to such lien.

---

3. The legislative history of section 6323 provides in pertinent part:

In these cases [*i.e.,* where a surety agrees to finance the completion of a contract entered into by the taxpayer] no limitation is placed on the time during which a disbursement may be made as long as the person is *obligated* to do so at the time of the tax lien filing by a written agreement. As a result, *if an effort is* made to foreclose on a federal tax lien before *all* of the potential obligations under an obligatory disbursement contract are met, these potential obligatory disbursements are given priority over the federal tax lien. S.Rep. No. 1708, 89th Cong.2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3722, 3730. (Emphasis added).

## IV

In summary, we find and conclude that Tri-City possessed no right to the partial payment to which the United States tax lien and subsequent tax levy could attach. Moreover, we find and conclude that assuming, *arguendo*, Tri-City possessed an interest or right in the partial payment, USF & G possessed superior rights to such payment.

Accordingly, it is

ORDERED (1) that the United States' motion for summary should should be and is hereby denied. It is further

ORDERED (2) that USF & G's motion for summary judgment should be and is hereby granted. It is further

ORDERED (3) that the sum of $27,-703.28 now in the registry of this Court be paid to USF & G.