### AMWEST SURETY INSURANCE COMPANY

v.

### UNITED STATES of America.

No. 3:92CV0221 (PCD).

United States District Court,
D. Connecticut.

Sept. 26, 1994.

Matthew M. Horowitz, Wolf, Horowitz & Thayer, Hartford, CT, for plaintiff.

Carl J. Schuman, U.S. Attorney's Office, Hartford, CT and John V. Cardone, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### RULING ON CROSS MOTION FOR SUMMARY JUDGMENT

DORSEY, Chief Judge.

Cross motions for summary judgment are pending in this case. Plaintiff, as surety for SMP Developers, Inc., was obliged to perform on its bond when SMP defaulted in the performance of its contract with Credo Housing Development Corporation. Amwest has made payments of $87,199.89. The Internal Revenue Service (IRS) assessed SMP for unpaid taxes and filed liens therefor. It subsequently levied on Credo's payments due SMP. Credo paid the IRS pursuant to the levy. Amwest claims a priority interest over the IRS lien and claims a wrongful levy in the payment to the IRS. I.R.C. § 7426. Based on stipulated facts, the parties agree their priorities are to be decided on the cross motions.

FACTS:

On May 24, 1991 SMP contracted with Credo. Amwest then issued a performance bond naming financiers, Credo and the State of Connecticut, as obligees. Exs. 1 and 2. SMP's failure to pay employees or subcon-

tractors constituted a default as to Credo. Ex. 1. Work began on June 2, 1991 and on July 9, Credo paid SMP for work done in June. Through August 10, 1991, SMP defaulted on payments owed to employees, Exs. 6, 8, and for materials, services and equipment used on the job. Checks issued on June 21 and July 14 were not covered by sufficient funds. Credo terminated the contract by letter dated August 16, 1991, Exs. 10, 11, and invoked Amwest's bond obligations. Commencing September 11, 1991, Amwest paid $54,523.65 due suppliers and laborers and incurred $6,471.55 in performance costs. SMP assigned to Amwest, on default, any and all sums due or to become due pursuant to such contracts. Ex. 3, ¶ 3A.3. The assignment was "effective as of the date of each [ ] bond, but only in the event of Default ..." id. A default occurred when SMP failed "to pay for any labor or materials when such payment [was] due ...". Ex. 3, ¶ 3C.

On July 28, 1991, SMP submitted to Credo its requisition for work performed in July in the amount of $42,476.64. Ex. 5.

On five dates in 1989, 1990 and 1991, most recently June 3, 1991, the IRS assessed SMP taxes totalling $102,957.82. Despite notice and demand for payment, SMP did not pay. Tax liens arose on the dates of the assessments in favor of the IRS and against all of SMP's property. Notices of liens were filed with the Secretary of the State of Connecticut on June 25, 1991, in the amount of $36,117.94, and on July 31, 1991, in the amount of $30,147.55. On August 5, 1991, the IRS served Credo with copies of the notices of liens and a Notice of Levy.

On August 15, 1991, Credo paid the IRS $42,476.64 requisitioned by SMP and representing its work in July, 1991.

DISCUSSION:

The question presented is whether Amwest's claim to a payment due SMP from Credo, that was subsequently paid to the IRS, is superior to IRS's claim to that same payment. Amwest began making payments under its bonds on September 11, 1991. SMP had defaulted on payments for labor and materials as of August 15, 1991. Additionally, by July 6 SMP had issued 21 checks which were not honored by SMP's bank for want of sufficient funds. The surety obligation was invoked when Amwest was notified of the claimed defaults by Credo's letter of August 16, 1991, Amwest met its obligations by paying SMP's established obligees and the expense necessary to complete the project.

During July 1991, SMP performed its contract for which it submitted its invoice on August 5, 1991, then becoming entitled to payment therefor.

Plaintiff was SMP's surety, not its insurer. As surety, Amwest seeks reimbursement for payments made by receiving the contract payments owed to SMP. Its claim is for equitable subrogation. *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 136, 83 S.Ct. 232, 234–35, 9 L.Ed.2d 190 (1962); *Balboa Insurance Co. v. Bank of Boston Connecticut,* 702 F.Supp. 34, 36 (D.Conn.1988). "When a surety performs its obligations under a ... bond, it stands in the shoes of the contractor. Thus, if the contractor has the right to the retained funds, the surety accedes to those rights *when it meets its obligations under the bonds.*" *Id.* at 37. (Emphasis added, citations omitted).

The question presented is whether the surety's interest in the contract payments, though not a fully ripened enforceable right when the government perfected its lien, has nonetheless been endowed with a priority which defeats the government's claim. Plaintiff's accrual of its interest in the Credo payments is the date of its bond, May 24, 1991.

By that date, the government on four occasions had assessed taxes on four occasions totaling $74,934.40. See Stipulation ¶ 64. It is undisputed that United States tax liens arise on the assessment dates against all SMP property. See Stipulation ¶ 67; I.R.C. § 6322. Tax liens reach after acquired property. Notices of liens were filed on June 25 and July 31, 1991. Notice perfects liens. *Miller v. United States,* 763 F.Supp. 1534 (N.D.Cal.1991).

The government's claim to the proceeds is based on statutorily created tax liens, notices

of which predated the plaintiff's payments. They also claim plaintiff is entitled to no relation back of its interest in the Credo payment.

In 1966 Congress added I.R.C. § 6323(c) which dated tax liens to the date of notice but prioritized certain security interests over tax liens:

> (1) ... To the extent provided in this subsection, even though a notice of a lien ... has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which
>
>> (A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting— ...
>>
>>> (iii) an obligatory disbursement agreement, and
>>
>> (B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.

*Id.*

The government concedes that if the conditions of the statute are met, a surety's interest in contract proceeds pursuant to a bond executed before a tax lien is filed, will prevail over the lien even if the surety payments are made after liens are filed. It does not dispute plaintiff's bond as an obligatory disbursement agreement. *See* I.R.C. § 6323(c)(1)(B). What it does dispute is that plaintiff does not meet the requirement that plaintiff's interest be protected under local law. *Id.* In effect the government argues that plaintiff's claim is not shielded from a judgment lien which was valid and enforceable at the time of the filing of the tax liens. Particularly it notes the absence of the filing of a financing statement to perfect a security interest as required by Conn.Gen.Stat. § 42–9–302. It follows says the government that an unperfected security interest gains no priority over a judgment lien creditor as a matter of state law, citing Conn.Gen.Stat. § 42–9–301(1)(b). Only the statute is given as authority for the proposition.

Plaintiff's claim is premised on I.R.C. § 6323 asserting that it should prevail against a theoretical judgment lien perfected as of the filing of the tax liens. It does however, concede the lack of any U.C.C. filing. In view of the parties' focus on this provision, the plaintiff's payment after the lien filings is irrelevant.

The government's claim is premised on the applicability of the cited U.C.C. sections. There is no reference in the U.C.C. to sureties. There is no explicit requirement that sureties file to ensure their claim. It has been found by this court that the omission was intentional, *Recommendation of the Editorial Board for Changes in the Test and Comments of the Uniform Commercial Code*, U.C.C. § 9–312, at 24–5 (Proposed Official Draft, Text and Comments Edition, 1953), and thus no such filing is required to perfect a surety's interest in the proceeds of its principal's contract. *Balboa Insurance Co. v. Bank of Boston Connecticut*, 702 F.Supp. 34, 36 (D.Conn.1988); *In re J.V. Gleason Inc.*, 452 F.2d 1219, 1222 (8th Cir.1971); *National Shawmut Bank v. New Amsterdam Casualty Co.*, 411 F.2d 843 (1st Cir.1969). In addition, the U.C.C. does not address a surety claim in its reference to security interests in "personal property or fixtures." A surety claim is derived from equity and not from a contract, nor the ordinary financing contemplated by U.C.C. art. 9. Further, to create a contract·obligation to its principal, a surety would be obliged to expend funds to only then to go unreimbursed if required to file to gain a priority over an earlier filed competing claim. No unfairness to the competitor results because sureties' involvement in contracts is generally known. An inequity does result if sureties' later expenditures accrue to the benefit of prior claims. If sureties were not reimbursed because they stand in line with other creditors, bonds would not be issued. Finally, uniformity, the purpose of the U.C.C., is achieved as opposed to disparate results if states' laws control.

A tax lien has a priority interest if filed before execution of a bond, but would not prevail against an unrecorded equitable surety interest from a bond executed before a noticed tax lien. *United States v. Trigg*, 465 F.2d 1264 (8th Cir.1972), *cert. den.* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973);

*Kansas City v. Tri–City Construction Co.,* 666 F.Supp. 170 (W.D.Mo.1987): *Housing Authority v. General Ins. Co.,* 392 F.Supp. 65 (E.D.Mo.1974). The government argues that the relation back principle by which a surety's payments make choate its inchoate claim does not apply. This argument flies in the face of the Priority Statute of 1966 and the legislative history. *See* S. Rep. No. 1708, 89th Cong., 2d Sess., reprinted in 1966 U.S. Code Cong. & Adm.News 3722, 3730. No convincing authority is cited for the argument. *See The Employers Liability Assurance Corp. v. Crandall,* 22 Conn.Supp. 404, 173 A.2d 926 (1961). The surety's right to the contract proceeds arises from its undertaking to guaranty the performance of the contract. The right to enforce the claim to the proceeds results from making expenditures in performing the guaranty. This result insures the project owner against liens otherwise imposable for costs of constructing the project by having its contract payments apply to the of the costs of construction.

Likewise the government's waiver and estoppel arguments are not substantiated by the record, by the statutes nor by convincing authority.

CONCLUSION:

As Amwest has demonstrated that the proceeds payable by Credo were subject to its equitable rights arising from its bond issued before the tax liens were perfected by filing, plaintiff's motion (doc. # 12) is granted and judgment shall enter for plaintiff in the amount of $42,476.54. Plaintiff may substantiate its claim for interest by a further submission in support therefor within 10 days hereof. The government's motion (doc. # 10) is denied.

SO ORDERED.