DECISION
This matter is before the Court on the State's Civil Complaint to forfeit certain funds seized pursuant to search warrants relating to the named defendant Thomas Ricci.[1] Thomas Ricci was arrested at his home at 183 Central Avenue, Johnston, Rhode Island on November 15, 2000 for conducting an organized criminal sports gambling enterprise. Acting on a search warrant, State Police seized $1,731.00 in U.S. currency from his home. The next day, pursuant to other warrants, it seized $1,063.37 from a savings account in Ricci's name at Citizens Bank on Plainfield Pike, Cranston, Rhode Island, and $50,000.00 in U.S. currency from safe deposit box 582-9 in the name of Thomas Ricci and his mother, Gena Ricci. Forfeiture is sought pursuant to § 11-19-24 of the Rhode Island General Laws. Gena, the first named signatory on the safe deposit account contends the $50,000.00 was hers and not the proceeds of any organized gambling operation, and seeks its return. The parties have agreed to certain facts numbered 1 to 19 which are attached hereto as Exhibit A and made a part of this Decision.
Preliminarily this Court ruled that the burden of proof in the case rests on the State to establish its claim by a preponderance of the evidence. In so doing it refused to adopt the standard set forth under the forfeiture provisions of the Uniform Control Substances Act which upon establishment of probable cause by the State, then shifts the burden to the claimant to prove by a preponderance of the evidence that the property was not subject to forfeiture. The Court held that since the gambling statute did not include this standard it would not infer it, in light of the general principal that forfeiture statutes are to be strictly construed. United States v. Jenison, 484 F. Supp. 747 (1980). Additionally the Court now notes that the Uniform Control Substances Act was a part of the "war on drugs" of the 1980's wherein many unique standards were enacted in an attempt to get tough on drug dealing. (See Art. 1, Sec. 9 of the Rhode Island Constitution making certain drug offenses non-bailable, as well as § 12-13-5.1 of the Rhode Island General Laws, presuming such offenders to be dangerous and thus not entitled to bail.) As serious as illegal gambling is, the people and the legislature never enacted these higher standards, and this Court will not adopt the State's position and apply them by inference.
 Arguments Raised
The State argues that Thomas Ricci was a major gambler who kept his illegal proceeds readily available by using safe deposit boxes and savings accounts and by keeping cash on or near his person.[2] Through testimony of its two witnesses, the State contends that the $50,000.00 in the safe deposit box came from gambling precisely because Ricci told them he kept his proceeds in a safe deposit box and savings account at the Citizens Bank on Plainfield Pike in Cranston, Rhode Island. Additionally, the magnitude of his gambling activity explains the large amount of money found in the safe deposit box. The State belittles the argument that those funds belonged to Gena Ricci noting that the only person to ever go into the box was Thomas Ricci. The State further argues that even if Gena Ricci was innocent of any gambling activities, as a joint tenant of the safe deposit box, her interest can be forfeited.Bennis v. Michigan, 516 U.S. 442, 116 Ct. 994.
Gena Ricci argues that the $50,000.00 in the safe deposit box was the accumulation of years of saving by her and her husband and that the money had been in a box in her home until Thomas discovered it and urged her to put in a safe deposit box.[3] She also contends that the State never inventoried the money or photocopied it, but instead spoiled the evidence by placing it in a State Police bank account where it went into the stream of commerce. She urges that an adverse inference must now be drawn against the State for spoliation of the evidence. Trancrelle v. FriendlyIce Cream Corp., 756 A.2d 744 (2002). Finally, she argues that the statute in question prevents the State's forfeiture from her "unless it shall appear the owner of the property had knowledge, actual or constructive, and was a consenting party to the alleged illegal act." § 11-19-24, Rhode Island General Laws. She argues that since no such evidence was presented she is entitled to the return of the $50,000.00. Thomas naturally argues similarly regarding the box and adds as to the box, the savings account, and the cash seized from the house, that the State has failed to prove a connection between the cash seized and any underlying illegal activity. He cites Jennison, id., and other cases for the proposition that to be subject to forfeiture the money at the time of seizure must be an integral part of the gambling transaction and not have been reduced to the exclusive ownership of the claimant. Commonwealth v.Colbert, Pa. D. C. 647 (1947).
 Discussion and Findings of Fact
At the outset, the Court recognizes the scourge on our society created by gambling, illegal and legal. One only has to witness the number of people coming through this very Court, who through addiction to gambling have ruined their lives and that of their families. There is no doubt that Thomas Ricci has been a part of organized gambling. He admitted to it and is now on probation for it. The issue here is whether the State can forfeit the money that it seized.
Looking first to the $50,000.00 seized from the safe deposit box,[4]
the Court took careful note of Detective Hawkins expertise in investigating illegal gambling activities, and it also gave weight to the uncontradicted testimony that Tomas Ricci acknowledged keeping his gambling proceeds in a safe deposit box and savings account at Citizens Bank on Plainfield Pike. Nevertheless, it was equally impressed with the testimony of Gena Ricci that the money in the box came from her depression era mentality that the only safe place to keep one's nest egg was "under the mattress," or in this case, in a box in her closet. The Court is not so naïve as to think a mother might not come to the aid of her recalcitrant son, but in her 48 pages of deposition testimony she came across as a believable witness, who in fact, with her husband, had been saving cash over the years, and keeping it near at hand. In looking at the account itself, the Court notes that Gena was listed as the first tenant, indicating that the box was principally hers. While the entry slip refers to only one entry, and that is by Thomas, Gena testified that she too went to the bank the day the box was opened. She testified that when she next returned, the box was empty except for some birth records. Also, the Court notes that the Citizens safe deposit box that was solely in Thomas' name and to which he had a key, was in fact empty when searched by police. Perhaps most important to the Court is the fact that an inventory of the contents of the box was never taken. No photo copies were made of the cash, no record was made of the jewelry. How helpful it would have been to have known if the money in the box was "old money" that could have been accumulated over the years as compared to money of more recent vintage, more likely to be attributed to gambling activity. While the Court finds no ill intent on the part of the officers investigating this case, it does agree that they are responsible for the evidence being spoiled and an inference must therefore be drawn against the party seeking to forfeit the funds.
With regard to the $1,063.37 seized from Thomas Ricci's savings account #45962598 at Citizens Bank, the Court notes again Mr. Ricci's statement that he kept his gambling funds in a savings account. However, there is nothing more; nothing to show when the money was deposited, in what amounts or whether withdrawals ever occurred. Without this evidence, it is difficult to connect these specific funds with illegal gambling activities.
Finally, in reference to the $1,731.00 seized from Thomas Ricci's home at 183 Central Avenue, the Court was impressed by Sgt. DelPrete's testimony that as they searched, they found phones, pads, fax machines, records, check books, credit cards, two address books with names and the $1,731.00. This was clear evidence of gambling and the $1,731.00 could certainly be inferred to be a part of it. Nothing was offered by the defense to contradict this.
 Accordingly, the Court finds as fact.
 1. The safe deposit box #582-9 at Citizens Bank was jointly owned by Gena Ricci and Thomas Ricci.
 2. The $50,000.00 found in the box belonged to Gena Ricci as an accumulation of her life savings.
 3. This money had previously been kept by Gena Ricci in her home.
 4. None of the money was the result of illegal gambling.
 5. The State, by failing to identify and inventory the $50,000.00, is responsible for spoliation of this evidence.
 6. The $1,063.37 in account #45962598 at Citizens Bank belonged to Thomas Ricci.
 7. Without further information as to the history of this account there is no evidence to find that this money was the result of illegal gambling activities.
 8. The $1,731.00 seized during the execution of the search warrant at Thomas Ricci's home was part of a list of items which showed a clear pattern of illegal gambling activity. Coupled with these items of illegal gambling activity this Court is satisfied that a strong inference can be drawn that this money ($1,731.00) was integrally connected with that activity.[5]
Accordingly, this Court finds that the State has failed to convince it by a preponderance of the evidence that the $50,000.00 in the safe deposit box and the $1,063.37 in the savings account should be forfeited to the State. They must be returned to the claimants. With regard to the $1,731.00 seized from Thomas Ricci's home, the Court is satisfied that the State has met its burden and those funds shall be forfeited.
Counsel shall present an Order for entry.
[1] At trial the Court granted the State's motion to amend the Complaint to an in rem action against the $52,794.37 seized.
[2] That Ricci was involved in illegal gambling is established by his nolo plea in February, 2002 where he was placed on 2 years probation for conducting illegal gambling activity and conspiracy.
[3] She had done the same with a separate box containing proceeds from an insurance settlement naming her daughter as a co-tenant.
[4] Testimony from Sgt. DelPrete indicated that in addition to the $50,000.00, jewelry, sports cards and paper work were found in the box.
[5] The Court rejects those cases cited by Thomas Ricci contending that once money which had been an integral part of gambling activities has been reduced to the exclusive ownership of the claimant, it cannot be forfeited.