**UNITED STATES FIDELITY & GUARANTY COMPANY,**
Appellant,

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION,**
Respondent.

**No. WD 42275.**

Missouri Court of Appeals,
Western District.

Feb. 6, 1990.

G. Steven Ruprecht, Kansas City, for appellant.

Rich Tiemeyer, Chief Counsel, Cynthia B. Green, Asst. Counsel, Jefferson City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

This case involves the question of who has priority on retained construction proceeds—the surety on a performance bond which advanced the funds to complete the project when the principal, the contractor, ran out of money, or, the state as obligee which was owed a previous debt by the contractor. The facts here are somewhat unusual, making a brief overview in order.

Tri-City Construction Company (Tri-City) and its subsidiaries contracted with the Missouri Highway and Transportation Commission (Commission) to repair five specific highway projects in Jackson County, for an approximate total of $6,600,000. The appellant United States Fidelity & Guaranty Company (USF & G) acted as surety by writing the required performance and payment bonds in favor of the Commission. Well into construction, Tri-City ran out of operating funds, so USF & G took over supplying money to Tri-City and various creditors which allowed Tri-City to complete the work without there ever having been a declared default. USF & G arranged to have the Commission make all future progress payments to it. To hold down losses on the bond and to insure prompt completion of the projects, USF & G felt it was best to have Tri-City, rather than a new construction company, complete the job. USF & G had Tri-City execute notes, financing statements and other documents covering the funds it advanced. State payments on the contracts were to be applied to the shortfall.

Out of the last retainage of the progress payments on two of the projects, the Commission deducted an amount owed it by Tri-City for a prior debt created by Tri-City and two related corporations on a prior commissioner's award which exceeded the ultimate value placed on their property condemned by the Commission. Attempts by USF & G to persuade the Commission to pay it the final sums in the retainage were unsuccessful, so it filed this suit for $73,170.77, the sum the Commission claimed it held by way of setoff.

Summary judgment was requested by both sides and granted to the Commission on stipulated facts which are now set out: the chronology of events listed below is divided; the column on the left showing the evolvement of the Tri-City debt growing out of the condemnation, the right side tracking construction and the performance

bonds on the two projects to which the Commission applied its setoff.

| Date | CONDEMNATION | CONSTRUCTION |
| --- | --- | --- |
| 12–70 | Condemnation of property owned by Tri–City and two related companies. (R.E. Wolfe and family comprised offices of all three) | |
| 2–75 | Condemnation exceptions settled: Tri–City owes $114,000, related companies owe $50,000—they execute separate notes to the state | |
| 1978 | No payments on notes, Tri–City then owed $64,500, the related companies $45,000 | |
| 11–4–83 | | Performance Bond in penal amount of $1,309,902 written on project # 435–691 |
| 12–1–83 | | Master surety agreement |
| 12–30–83 | Novation of related companies debt and new note payable by Tri–City for the full $110,000 ($64,500 Tri–City—$45,000 other companies) | |
| 6–1–84 | | Performance bond written in penal amount of $1,212,212.91 on project # 70–1(89) |
| 9–15–84 | Tri–City executes new installment note for $98,000 payable at $2,000 a month plus interest, but immediately due upon default | |
| 8–22–85 | | Tri–City letter to Commission requesting payments be made to USF & G |
| 9–9–85 | | Financing statement with funds advanced to Tri–City to pay bills |
| 9–10–85–5–14–86 | | Payments to Tri–City by USG & G |
| 5–14–86–10–31–86 | | Payments direct to creditors by USF & G |
| 10–25–85 | | # 70–1(89) completed |
| 11–25–85 | | # 435–691 completed |
| 3–18–86 | Commission declared default on 1984 note (Sept. 1984 payment not paid, March 1986 payment | |

| Date | CONDEMNATION | CONSTRUCTION |
|------|-------------|--------------|
| | not paid and a check for another payment bounced) $64,945 was immediately due | |
| 8–21–87 | Commission, after receiving no payment, declares $73,170.77 due and deducts from the retainage of these two projects the amounts shown in parentheses # 70–1 (89) ($51,170.77) # 435–691 ($22,000) | |

The projects were timely completed and accepted by the Commission, all payments on the contracts went to USF & G except for the funds in question, and no formal default was ever declared by the obligee-Commission. On the two projects in question, USF & G made a total expenditure of $1,207,000. The Tri–City corporate charter was forfeited in October, 1986. No question has ever been raised as to the dire financial condition of Tri–City which became obvious in August, 1985. USF & G did not inquire of the Commission about the ongoing collection arising out of the condemnation, and was first informed of this debt in August of 1987 when the deduction from the retainage was formally made.

Based on the facts, the trial court rendered judgment for the obligee-Commission reasoning 1) there was no claim by the Commission of non-performance, 2) under a performance bond the surety only incurs liability when the obligee claims the principal is not performing the contract, and 3) payments by USF & G were nothing more than a loan to which it must look, as a lender, to Tri–City, the borrower, for repayment, not as the bond surety. Therefore, reasoned the court, absent payment under the performance obligation, any claim USF & G had to the retained proceeds was inferior to the Commission's right of equitable set off on the debt of Tri–City. *Strong v. Gordon*, 203 Mo.App. 470, 221 S.W. 770, 771 (1920).

 As stated earlier, the issue here is which party gets priority, the public entity owner who has an equitable right of setoff, or the completing surety which has an equitable lien on the contract proceeds.

The case at bar is factually similar to *Morrison Assurance Company, Inc. v. United States*, 3 Cl.Ct. 626 (1983), where the contractor owed money to the Internal Revenue Service. This amount was deducted from the proceeds of a National Park Service contract. During construction, the surety, through its investigation, found out suppliers and the IRS were not being paid. The financial condition of the contractor was so poor, the surety felt default was inevitable. The surety had Park Service payments to the contractor stopped and assigned to it, and determined "it would be less expensive to utilize, if possible, CBC (the contractor) to complete the projects." As in the case at bar, the surety funded the successful completion of the project, no formal default having ever been declared by the government, nor were federal procedures followed for a surety takeover. In ruling for the surety, the United States Claims Court relied on *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317 (5th Cir.1967), cert. denied, 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 873 (1968), to declare that when a surety pays construction expenses under a performance bond, it receives the contract proceeds free from setoff by the government, for it is entitled to the money not as a creditor and subject to setoff, but as a subrogee having the same rights as the government. The court wrote that the fact the contractor stayed on the job was inconsequential; likewise, no formal declaration of default did not mean the surety could not be deemed a completing surety.

The Claims Court held the surety's action prevented a delay in the successful completion of the government's project. As is appropriate to this case, the *Morrison* court held, "[t]o invalidate plaintiff's takeover because of a failure to follow exactly the technical requirements of the takeover regulation (as interpreted by the defendant) is to elevate form over substance."

*Morrison, supra,* reflects what have been the applicable principles of law both nationally and in Missouri. "A surety who completes a contract has an 'equitable right' to indemnification out of a retained fund," and equity protects a surety's right of subrogation in a fund when it completes a contract, though not called upon to do so by paying labor and materialmen. *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 138–39, 83 S.Ct. 232, 235–36, 9 L.Ed.2d 190 (1962). Likewise, when a surety under a performance bond, ". . . is thereafter required to pay unpaid labor and materials claims, or to complete the contract upon default by the contractor, [it] has an equitable lien retained by the owner or obligee . . ." *First State Bank v. Reorganized Sch. Dist. R–3, Bunker,* 495 S.W.2d 471, 480 (Mo.App.1973); *Mayer v. Alexander and Baldwin, Inc.,* 56 Haw. 195, 532 P.2d 1007, 1010 (1975).

There is good reason a performance bond surety can defeat the claims of even the IRS of retained contract proceeds. *Security Ins. Co. of Hartford v. United States* 192 Ct.Cl. 754, 428 F.2d 838, 841 (Ct.Cl. 1970). The surety who finances completion under a completion bond "confers a benefit upon the government by relieving it of the task of completing performance itself . . .," and "becomes subrogated not only to the rights of the prime contractor but to the government. . . ." It "has the right to the accumulated funds free from setoff by the government." *Dependable Ins. Co., Inc. v. United States,* 846 F.2d 65, 67 (Fed.Cir. 1988).

Under the facts here, the conclusion that USF & G was a lender and therefore a creditor of the contractor subordinate to the state's right of set off for the condemnation debt misses the mark. *See, Indem-* *nity Ins. Co. v. Lane Contracting Corp.,* 227 F.Supp. 143 (D.Neb.1964). The fight for funds in *First State Bank, supra,* was between a performance surety and a bank that lent money to the contractor; in contrast, USF & G was not truly a lender here, but a completing surety, no matter whether 1) a formal default occurred, 2) Tri–City physically completed the jobs, or 3) Tri–City executed notes and documents acknowledging the funds advanced. *Cf. Quality Wood Chips, Inc. v. Adolphsen,* 636 S.W.2d 94, 97 (Mo.App.1982).

Also rejected is the Commission's argument of the bond here being both for performance and for payment, and that the surety's payment for certain materials and labor was under the *payment* bond and not for performance. That argument has been flatly rejected in *Aetna Casualty and Surety Co. v. United States,* 435 F.2d 1082 (5th Cir.1970).

The equitable lien of USF & G takes over the setoff right of the Commission. Otherwise, the surety transaction could work out in such a way as to make the surety pay the government for unrelated debts existing long prior to the work in question. *Maryland Casualty Co. v. United States,* 100 Ct.Cl. 513, 53 F.Supp. 436, 440 (1944). To affirm the trial court's judgment would be to reward the Commission for its prolonged delay in collecting the debt created from the excessive drawdown in February 1975. It would punish a completing surety that finished the contract on time and never had a glimmer of an idea of the earlier eminent domain activities.

■ Although neither briefed nor argued, this court will address the effect of Tri–City's December 30, 1983 novation of the two related companies' debt of $45,000 owed to the Commission.

The stipulation of the parties stated that Tri–City executed a new note for the debt on December 30, 1983. Thus, the original obligation of Tri–City was extinguished and a new obligation including an additional amount of $45,500 from the related companies (who had nothing to do with this construction) accrued, for priority purposes, on December 30, 1983, the date of the nova-

tion. 66 C.J.S. Novation § (1950); *see also Matter of Brownsberger,* 61 B.R. 22 (Bkrtcy.W.D.Mo.1986); *Health Related Services, Inc. v. Golden Plains Convalescent Center, Inc.,* 705 S.W.2d 499 (Mo.App. 1985). The performance bond on project # 435–691 was written on November 4, 1983, well before this novation occurred. $22,000 of the retainage on this project was deducted by the Commission on August 21, 1987. "Suretyship law provides the surety [USF & G] an equitable lien to funds owing to a principal [Tri–City] upon the surety's performance of the principal's obligation, which relates back to the time the contract of suretyship was executed [execution date of the bonds]." *Kansas City, Mo. v. Tri–City Const. Co.,* 666 F.Supp. 170, 173 (W.D.Mo.1987); *Div. of Employment Sec. v. Trice Const. Co.,* 555 S.W.2d 65, 67 (Mo.App.1987); *National Surety Corporation v. Fisher,* 317 S.W.2d 334, 341–42 (Mo. banc 1958). In the instant case, USF & G's equitable lien relates back to November 4, 1983, the date bonds were written on project # 435–291. As previously stated, the Commission's priority to $45,500 owing from the related companies did not arise until December 30, 1983, the date Tri–City became liable through way of novation. Since USF & G's equitable lien antedated the Commission's priority date, arguably USF & G had priority to at least part of the $22,000 retainage from project # 435–691. *Tri–City,* at 173; *Trice,* at 67–68. Since the case is decided on suretyship law, any further discussion on the novation of all or part of the condemnation debt and rearranging of the priorities is unnecessary.

The taking by the Commission of the retainage by way of setoff was incorrect. The performing surety's lien controls and prevails. *Aetna Casualty Co. and Surety Co. v. United States,* 845 F.2d 971, 975 (Fed.Cir.1988); *Trinity Universal, supra.* The judgment is reversed, and the case is remanded to grant summary judgment in favor of the appellant, USF & G.