

# In the Missouri Court of Appeals
# Eastern District

**DIVISION ONE**

| | | |
|---|---|---|
| HOEMAN CAPITAL MANAGEMENT, | ) | No. ED112375 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 20SL-CC05725 |
| | ) | |
| DAVID ROBINSON and 7 R FARM | ) | Honorable Ellen H. Ribaudo |
| COMPANY, | ) | |
| | ) | |
| Appellants. | ) | Filed: June 10, 2025 |

Before James M. Dowd, P.J., Angela T. Quigless, J., and Cristian M. Stevens, J.

**OPINION**

Kansas resident David Robinson and his family's business, 7 R Farm Company (the Farm), a Kansas corporation, appeal the default judgment entered in favor of Hoeman Capital Management, LLC (HCM), a Missouri company, on HCM's claim that Robinson and the Farm breached an agreement to pay HCM consulting fees HCM claims to have earned in connection with a personal loan it helped Robinson obtain.

Robinson and the Farm make several arguments in this appeal but their first point – that the judgment is void because the trial court lacked personal jurisdiction over them – is dispositive.[1] We agree that the court did not have personal jurisdiction over Robinson and the

---

[1] Appellants' remaining points: That the trial court erred in finding the contract valid because there was no meeting of the minds; that the court plainly erred in awarding to HCM a 50%

Farm because the lawsuit did not arise out of the "transaction of business" in Missouri by Robinson and the Farm under Missouri's long-arm statute since Robinson never traveled to Missouri and spoke just a few times on the phone and exchanged a few emails with Hoeman before signing the contract upon which HCM has based its suit. HCM's position is further undermined because the contract upon which this lawsuit is based is between HCM and the Farm, while the unpaid invoice HCM claims constituted the breach of contract was for services HCM performed for Robinson personally. Our holding begins and ends there and we therefore vacate the trial court's judgment.

**Background**

In 1976, Robinson's mother and father incorporated the family farm as a Kansas corporation and named it 7 R Farm Company. The Farm is in southwest Kansas near Dodge City. In early 2019, well after Robinson and his two sisters, Kansas residents all, had assumed ownership, the Farm was struggling to make payments on a mortgage held by MetLife. When MetLife threatened foreclosure, Robinson sought refinancing from several banks, all of which rejected his requests due to the Farm's financial predicament.

While attending a farm trade show in Wichita, Kansas, Robinson met Bill Mapes who owned an equipment leasing business in Wichita that also did financing. Robinson phoned Mapes and told him about the Farm's financial struggles and Mapes agreed to help. Then, apparently through Mapes's intercession, HCM's president, Mark Hoeman, phoned Robinson in Kansas. They discussed refinancing the Farm's MetLife loan. Ultimately, the two spoke twice

---

penalty because it violates Missouri public policy; that the trial court erroneously failed to invalidate as usurious the 1.5% per month interest rate per section 408.030.1; that the court erred in awarding compound interest and attorney's fees when the contract did not expressly allow for them as required in Missouri; and that the court erred in purporting to retain jurisdiction to award attorney's fees incurred in a separate Kansas lawsuit.

on the phone regarding the possibility of HCM helping the Farm to obtain financing before Robinson signed the contract at issue here.

The second of those two calls occurred in April 2019 and included Robinson, Hoeman, Mapes, and David Onion, the owner of Chicago Capital, a private lending company. Robinson attended that call from Kansas as well. They discussed the Farm's financing needs and a potential $2 million loan. On April 25, 2019, Hoeman emailed Robinson a seven-page document titled "Engagement Agreement for Debt Consulting Services 7 R Farms." It listed the two contracting parties as HCM and the Farm, which it referred to as the "Company." The contract described the scope of the work as the Project – the proposed $2 million in financing – which HCM agreed to facilitate on the Farm's behalf. The contract described how HCM would be compensated for its services. Robinson, again while in Dodge City, Kansas, received and signed the contract on behalf of the Farm on April 25th.

On June 14, 2019, David Onion sent Robinson via email its proposed loan to the Farm of $2 million. After Robinson's sisters balked at the interest rate as too high, the Farm rejected the proposal and Robinson notified Hoeman of that fact.

On August 1, 2019, Robinson, in his personal capacity, filed for bankruptcy. He testified that he then phoned Hoeman asking for his help to obtain a *personal* loan and Hoeman and Onion endeavored to help. Robinson did not sign a new agreement with HCM nor did the parties modify the original contract between the Farm and HCM to include these services that were for Robinson personally. Moreover, nothing in the record shows that, at the time of this new transaction, Robinson or Hoeman deemed it to be within the purview of the April 25 contract between the Farm and HCM.

3

On January 23, 2020, Chicago Capital sent Robinson a $1,204,000 financing proposal to which Robinson personally agreed. On August 19, 2020, the loan closing took place in Dodge City, Kansas at which Robinson was the only party present. The loan proceeds were paid directly to MetLife to satisfy the Farm's mortgage.

Several days after the closing, Hoeman called Robinson and told him he would send an invoice for his services. The invoice, addressed to the Farm, was for $60,200, a five percent consulting fee on the $1,204,000 loan. The invoice stated it was due upon receipt. Robinson made two payments to HCM totaling $20,000 but did not tender the remaining balance.

On November 19, 2020, HCM filed this action against Robinson and the Farm claiming they breached the April 25, 2019, contract by failing to fully pay HCM's invoice. According to the return-of-service affidavit, Robinson and the Farm were served in Dodge City on December 28, 2020. Robinson, personally and on behalf of the Farm, denies being served. After Robinson and the Farm filed no response to the lawsuit, HCM moved for default judgment. On July 1, 2020, the trial court granted Hoeman's motion for default judgment against both defendants on liability and for the damages pleaded in the petition.

Robinson claimed he learned of the lawsuit in January 2022 and on May 19, 2022, he and the Farm moved to set aside the default judgment pursuant to Rule 74.05 and Rule 74.06 on the basis that the judgment was void because the court lacked personal jurisdiction.

At the hearing on the motion to set aside, Robinson testified on behalf of himself and the Farm. The court denied the motion as to liability but set aside the damages portion of the judgment to allow Robinson and the Farm to conduct discovery on that issue. Finally, on December 20, 2023, the court issued the judgment that is before us in which it found pursuant to the contract that Robinson and the Farm owed HCM $224,057 which sum consisted of HCM's

4

fees, a late fee, and interest on the unpaid balance. The court then declared its intention to "retain jurisdiction" over the matter until the on-going collateral Kansas litigation concluded so the court could award attorney's fees incurred in that litigation.

This appeal follows.

## Standard of Review

Whether a default judgment is void for lack of personal jurisdiction is a question of law which we review *de novo*. *Bueneman v. Zykan*, 52 S.W.3d 49, 58 (Mo. App. E.D. 2001). In order to prove lack of personal jurisdiction in a default judgment setting, the party seeking to set aside the default judgment must show that the action did not arise out of an activity covered by the long-arm statute, but if it arose out of one of the long-arm statute's activities, then the party must show that it did not have sufficient minimum contacts within Missouri to satisfy due process. *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 119 (Mo. App. E.D. 2002); *Ground Freight Expeditors, LLC*, 407 S.W.3d 138, 141-42 (Mo. App. W.D. 2013) (holding that *before* a judgment, the plaintiff bears the evidentiary burden of proof when the defendant challenges personal jurisdiction, but the burden shifts to the defendant when they do not raise the personal jurisdiction issue until a post-judgment motion to vacate).

## Discussion

Resolution of this appeal hinges on two questions: (1) whether Robinson and the Farm transacted business in Missouri and, if so, (2) whether such transaction of business gave rise to HCM's action *sub judice* for breach of the April 2019 contract between HCM and the Farm. We find that Robinson and the Farm have carried their burden by showing that their *de minimus* contacts with Missouri – a few phone calls, some emails, and no physical presence – do not satisfy the transaction-of-business prong of Missouri's long-arm statute. Further, even if we

5

found that Robinson and the Farm had transacted business in Missouri, the record does not support the conclusion that HCM's breach of contract action arose out of that conduct because the contract was between HCM and the Farm and the services HCM performed which generated the unpaid invoice were services for Robinson personally, not the Farm.

"Personal jurisdiction is 'the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests." *Moore v. Crocker*, 674 S.W.3d 146, 150 (Mo. App. E.D. 2023) (quoting *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009)). A judgment rendered by a court without personal jurisdiction is void. *Id.* "Because personal jurisdiction is a 'personal privilege,' it is waived if not raised at the first opportunity." *Id.* "If the defendant seeks affirmative relief prior to raising the issue, any challenge to personal jurisdiction … is waived." *Id.* "In other words, by taking action inconsistent with a claim of lack of personal jurisdiction, a party is deemed to have submitted to the court's authority." *Id.*

First – preservation of Robinson's jurisdictional challenge. Hoeman claims Robinson and the Farm voluntarily submitted to the court's jurisdiction when, during the June 8, 2022, evidentiary hearing on the motion to set aside the default judgment, Robinson stated on cross-examination that he wanted the court to change its judgment to reflect the proper amount of damages owed. Hoeman asserts this exchange was an overt act constituting a general appearance which waived the jurisdictional challenge. *Heineck v. Katz*, 509 S.W.3d 116, 121 (Mo. App. E.D. 2016). Not so.

Robinson and the Farm preserved their jurisdictional challenge by raising it at their first opportunity in their motion to set aside the default judgment and, having done so, they were permitted to weigh in on the merits in this regard. *Walker v. Gruner*, 875 S.W.2d 587, 589 (Mo.

6

App. E.D. 1994) (when a defendant first challenges the court's jurisdiction, he may then "enter and probe into the merits of the case without the necessity of making the time-honored 'special appearance' or reserving the jurisdictional point at each stage of the procedure. Having once hoisted the flag at the beginning of the journey a litigant over whose person a court lacks jurisdiction need not continuously wave the flag at every way station along the route.").

Next – the long-arm statute, section 506.500.[2] Missouri's long-arm statute allows a Missouri court to exercise personal jurisdiction over an out-of-state citizen, resident, or business in connection with a cause of action which arises from such citizen, resident, or business doing any of the acts enumerated in section 506.500. Of the six acts enumerated in section 506.500, only the "transaction of any business within this state" is at issue here. But before addressing that dispositive issue, we note that HCM has not invoked the "making of any contract" prong of section 506.500.1(2) in this breach of contract action presumably since the contract upon which HCM has based this lawsuit was formed in Kansas when Robinson signed and accepted HCM's proposal on behalf of the Farm.

The transaction of business provision is to be construed broadly so that even a single transaction may confer jurisdiction. *Copeland v. WRBM, LLC*, 679 S.W.3d 30, 39 (Mo. App. E.D. 2023). But that single transaction must be the transaction that gives rise to the suit. *Id.* Moreover, "[u]se of mail or telephone communications, without more, does not constitute 'transaction of business' for purposes of long arm jurisdiction." *Capitol Indem. Corp. v. Citizens Nat. Bank of Fort Scott, N.A.*, 8 S.W.3d 893, 904 (Mo. App. W.D. 2000).

We find that Robinson and the Farm have sustained their burden by showing through deposition testimony and affidavits that on behalf of himself and on behalf of the Farm,

---

[2] All statutory references are to the Revised Statutes of Missouri (2016) unless otherwise stated.

7

Robinson's contacts with Missouri were minimal and limited to a few phone calls, emails, and likely mailed the two payments to HCM in Missouri though the record is murky on that last fact. Crucially, it is undisputed that neither Robinson nor any agent of his or of the Farm traveled to Missouri at any time.

Moreover, HCM chose to plead this case as a breach of the April 2019 contract between HCM and the Farm whereby HCM agreed to help the Farm obtain financing. Yet, the basis for its claim to payment in this lawsuit were HCM's services to Robinson *personally*. While Robinson may have used the loan proceeds to pay the Farm's debt to MetLife, the fact remains that the loan was to Robinson personally and the Farm was not liable for that loan such that it could be deemed to be part of the services HCM agreed to perform for the Farm.

The authorities that follow illustrate that these minimal contacts with Missouri do not satisfy the transaction-of-business prong of the statute. *Capitol Indem. Corp.*, 8 S.W.3d at 904; *Johnson Heater Corp.*, 86 S.W.3d at 117; *Watlow Elec. Mfg. Co. v. Sam Dick Industries, Inc.*, 734 S.W.2d 295, 297-98 (Mo. App. E.D. 1987); *Wilson Tool & Die, Inc. v. TBDN-Tennessee Co.*, 237 S.W.3d 611, 615-16 (Mo. App. E.D. 2007); *State ex rel. Metal Serv. Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984).

In *Johnson Heater Corp.*, Wisconsin resident Deppe planned to build a warehouse in Wisconsin and was referred to Johnson Heater, a Missouri corporation, for an HVAC system. *Id.* Deppe called Johnson Heater at its office in St. Louis County. *Id.* Johnson Heater tasked the remaining sales work to their regional sales manager in Wisconsin. *Id.* Deppe still had numerous conversations with the St. Louis office, provided information by mail and fax, and mailed a check for full payment to Johnson Heater's St. Louis County office. *Id.* at 118. Nonetheless, this Court found no personal jurisdiction over Deppe because he did not transact

8

any business in Missouri since "the only alleged business Deppe transacted was by telephone, fax, and mail." *Id.* at 120.

By contrast, in *Watlow*, 734 S.W.2d at 297-98, this Court found that respondent's contacts in Missouri satisfied the transaction-of-business prong of section 506.500.1(1). In addition to numerous phone calls and written correspondence, respondent sent its representative to Missouri to finalize the design of the product. *Id.* "[T]his single meeting [was] sufficient to satisfy the transaction of business requirement …." *Id.* Here, again, Robinson did not set foot in Missouri on his own behalf or on behalf of the Farm.

Like this case, in both *Wilson Tool & Die*, 237 S.W.3d at 615-16 and *State ex rel. Metal Serv. Center of Georgia, Inc.*, 677 S.W.2d at 327, the plaintiffs and defendants negotiated contract terms over the phone. But, *unlike* this case, the defendants also shipped materials to Missouri which this Court held constituted the transaction of business. *Wilson*, 237 S.W.3d at 615-16 (citing *Metal Serv.*, 677 S.W.2d at 327-28).

For its part, HCM contends that "[b]orrowers here transacted business in Missouri when Robinson deliberately sought out [HCM] and contacted Mark. Defendants voluntarily decided to do business with Hoeman, a Missouri company. Defendants' active recruitment of Hoeman's services satisfies the due process requirement of 'purposeful availment.'"

HCM's argument is fatally flawed in two respects. First, the "purposeful availment" principle is not relevant to our analysis. Since we have already held that Robinson's and the Farm's contacts with Missouri do not satisfy one of the enumerated acts of the long-arm statute, we need not consider the second part of the personal jurisdiction analysis – whether they had sufficient minimum contacts in Missouri to satisfy due process – which is when purposeful availment may be relevant. *See Capitol Indem. Corp.*, 8 S.W.3d at 904.

9

Second, HCM's assertion ignores that this transaction of business was between HCM and Robinson *in his personal capacity* while the contract HCM sued upon was between HCM and the Farm and HCM makes no claim that the parties modified the contract to include HCM's services to Robinson personally. And while we have noted that one Missouri contact may be sufficient in some circumstances, HCM has failed to demonstrate how this lone phone call is one of those rare cases particularly when it is so remote from the contract upon which the suit is based.

Lastly, HCM claims that the Missouri choice of law provision in the April 2019 contract proves that Robinson could "reasonably anticipate being haled into [a Missouri] court …." *Laser Vision Centers, Inc. v. Laser Vision Centers Intern., SpA*, 930 S.W.2d 29, 32 (Mo. App. E.D. 1996). But, a choice of law provision, on its own, is not sufficient to convey personal jurisdiction over a defendant. *See Hope's Windows, Inc. v. McClain*, 394 S.W.3d 478, 483 (Mo. App. W.D. 2013).

Thus, we find that Robinson and the Farm proved that their activity did not fall under the long-arm statute and the trial court's judgment is therefore void for lack of personal jurisdiction.

**Conclusion**

For the reasons set forth above, we vacate the court's judgment.[3]

_____
James M. Dowd, Presiding Judge

Angela T. Quigless, J., and
Cristian M. Stevens, J., concur.

---

[3] We also deny HCM's motion for attorney's fees.